UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CONNIE SHAW, | ) | No. ED CV 07-1602-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 14, 2007, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 26, 2007, and April 16, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 29, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.
/
/

## II.

## **BACKGROUND**

Plaintiff was born on December 17, 1963. [Administrative Record ("AR") at 138, 141, 144.] She has a ninth grade education[1] and has completed vocational training as a certified nurse's assistant. [AR at 155, 807.] Plaintiff has past relevant work experience as a certified nurse's assistant. [AR at 150, 158-59.]

On April 15, 2002, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been disabled since July 1, 2001, due to bipolar disorder, lack of concentration, severe depression, and manic episodes. [AR at 138-40, 141, 144-47, 148-57, 703-05.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 88-89, 97-107, 706-07.] Plaintiff filed an untimely written request for a hearing on May 13, 2003 [AR at 106-09], and ALJ David M. Ganly issued an order dismissing plaintiff's request for a hearing on May 27, 2003. [AR at 90-93.] Plaintiff requested review of the dismissal on July 18, 2003. [AR at 110-13.] On June 23, 2004, the Appeals Council found that plaintiff had a good reason for not filing her request for a hearing in a timely manner and remanded the case to an ALJ. [AR at 94-96.] A hearing was held on January 3, 2005. [AR at 782-99.] Although counsel for plaintiff was present, plaintiff failed to appear at that hearing. [AR at 782, 784.] A medical expert testified. [AR at 787-99.] A vocational expert was present, but did not testify. [AR at 782, 784.] On August 18, 2005, ALJ Ganly determined that plaintiff was not disabled. [AR at 64-74.] Plaintiff requested review of the hearing decision. [AR at 12.] On May 15, 2006, the Appeals Council granted plaintiff's request for review, vacated the August 18, 2005, decision, and again remanded the case for further proceedings.[2] [AR at 54-57.]

---

[1] Plaintiff testified at the March 22, 2007, hearing that she had "about [a] ninth grade" education; however, in the Disability Report dated April 15, 2002, plaintiff indicated that she had a seventh grade education. [AR at 155, 807.] This discrepancy with respect to plaintiff's education level has no material impact on the Court's analysis herein.

[2] In remanding the case for further proceedings, the Appeals Council also vacated a favorable determination issued on July 8, 2004, based on applications that had been filed on

2

A second hearing was held on March 22, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 800-27.] A medical expert and a vocational expert also testified. [AR at 808-17, 825-27.] On April 19, 2007, a different ALJ determined that plaintiff was not disabled. [AR at 18-28.] Plaintiff requested review of the hearing decision and additional time to submit new evidence.[3] [AR at 12-17.] When the Appeals Council denied plaintiff's request for review on October 26, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.] This action followed.

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

---

February 27, 2004, and consolidated those claims. [AR at 55-57.]

[3] The Appeals Council granted plaintiff's request for more time on September 11, 2007. [AR at 10-11.]

3

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and

final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[4]  [AR at 24.]  At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "bipolar disorder; personality disorder, not otherwise specified; and polysubstance abuse, in remission since late 2002." [AR at 24.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[5] to "perform work at all exertional levels as long as the work is object-oriented, limited to moderately complex tasks involving up to four to five steps of instructions, performed in an habituated setting, does not require safety operations or working around hazardous machinery, and involves only impersonal interactions with others and no interactions with the public that are emotionally charged." [AR at 24.]  At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work.  [AR at 26.]  At step five, the ALJ found, based on the vocational expert's testimony, that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 27.] Accordingly, the ALJ determined that plaintiff is not disabled.  [Id.]

/
/
/
/
/

---

[4]    The ALJ also determined that plaintiff "met the insured status requirements of the Social Security Act through December 31, 2006." [AR at 24.]

[5]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly consider the State Agency psychiatrist's findings; (2) properly consider the type, dosage, effectiveness, and side effects of plaintiff's medication; (3) properly consider the lay witness statements; and (4) pose a complete hypothetical question to the vocational expert. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**LAY WITNESS STATEMENTS**

Plaintiff argues that the ALJ failed to consider the lay witness statements provided in the Daily Activities Questionnaires completed by plaintiff's mother, Susan West, on May 2, 2002 [AR at 168-72], and plaintiff's friend, Dale W. Crawford, on April 29, 2002. [AR at 173-77.] Joint Stip. at 11-12.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), the Social Security Administration will, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely malingering . . . . While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability

determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

Here, the ALJ failed to consider the lay witness statements of Ms. West and Mr. Crawford. In the decision, the ALJ did not even mention the Daily Activities Questionnaires completed by these two individuals, and thus did not provide germane reasons for rejecting the lay witness statements.[6] [AR at 21-28.] Nor was there any discussion of the lay witness statements in the prior decision of August 18, 2005, which the ALJ incorporated by reference into his April 19, 2007, decision. [AR 24, 67-74.] This is significant because "the Court is constrained to affirm the ALJ

---

[6] Defendant contends, relying on Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984), that the third-party statements provided by Ms. West and Mr. Crawford were "neither significant, probative nor competent, and therefore the ALJ did not err by failing to discuss them in his decision." Joint Stip. at 13. Specifically, defendant argues that in the questionnaire completed by Ms. West, she indicated that plaintiff had only been living with her for a "short time." Id. Defendant further argues that the medical evidence demonstrates that plaintiff's condition was significantly improved since 2002 (when she stopped abusing alcohol), and the lay witness statements of Ms. West and Mr. Crawford were drafted in April and May of 2002. Joint Stip. at 13. First, defendant's reliance on Vincent is misplaced. In Vincent, lay witnesses were making medical diagnoses, e.g., that the claimant had a serious mental impairment as a result of a stroke. Such medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence. See 20 C.F.R. §§ 404.1513(a), 416.913(a). However, "'lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence [citations omitted], and therefore *cannot* be disregarded without comment." Stout, 454 F.3d at 1053 (emphasis in original) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Unlike the lay witness testimony in Vincent, here, the lay witness statements constitute competent evidence that must be properly considered by the ALJ. See discussion, infra. Second, despite defendant's contentions, the ALJ in the decision did not proffer any reasons for disregarding the lay witness statements. Indeed, the ALJ made no reference whatsoever to the lay witness statements of Ms. West and Mr. Crawford. As such, defendant's *post hoc* attempt to justify the ALJ's failure to discuss the lay witness statements is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); see also Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions). Moreover, while defendant's contention that Ms. West completed the questionnaire at a point in time when plaintiff had only been living with her for a "short time" is accurate (Joint Stip. at 13), the ALJ did not render his decision until April 19, 2007, and therefore had ample opportunity to obtain more recent data, e.g., at the hearing on March 22, 2007, the ALJ could have inquired as to whether or not plaintiff was still living with Ms. West and Mr. Crawford or requested supplemental responses to the questions in the questionnaires from the lay witnesses. No such efforts were made by the ALJ.

only for the reasons set forth in his decision." See Johnson v. Astrue, 2008 WL 2705172, at *1 (C.D. Cal. July 7, 2008). The ALJ's failure to consider the statements of plaintiff's mother and plaintiff's friend -- both of whom saw plaintiff on a daily basis at the time the questionnaires were prepared and have known plaintiff for an extended time period -- was error. See Dodrill, 12 F.3d at 919 (citing Sprague, 812 F.2d at 1232) ("Disregard of [lay witness statements] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2).").

Furthermore, the ALJ's failure in this instance does not constitute harmless error because the written statements of plaintiff's mother and plaintiff's friend may have corroborated plaintiff's testimony[7] or provided additional information that would have impacted the ALJ's determination regarding the severity of plaintiff's impairments and how those impairments affect plaintiff's ability to work. See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case"). Indeed, the questionnaires lend some support to plaintiff's testimony regarding her inability to work. [AR at 804-05, 811, 817-25.] See Robbins, 466 F.3d at 885 (an ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work cannot be considered harmless error). Notably, in the portion of the questionnaire completed by Ms. West describing her observations of plaintiff's mental or emotional problem, she stated that plaintiff exhibits frustration, depression, sleeps too much, and occasionally talks about suicide. [AR at 168.] Ms. West also stated that plaintiff's usual mood was "at first anxious" and noted that her speech is rapid. [AR at 169.] Ms. West noted that plaintiff suffers from a "sleeping problem." [AR at 172.] Additionally, Ms. West stated that plaintiff's doctor recommended that Ms. West distribute plaintiff's medication to her. [AR at 172.] In the portion of the questionnaire completed by Mr. Crawford describing his observations of plaintiff's mental or emotional problem, he stated that plaintiff has

---

[7] The ALJ considered plaintiff's testimony, but found plaintiff "credible only to the extent consistent with having the ability to perform work within the limitations assessed [in the decision]." [AR at 25-26.]

"large mood swings; sleeps all day; [and] does not seam [sic] equivalent to her age." [AR at 173.] Mr. Crawford indicated that plaintiff does not always finish the projects that she starts and does not participate in planned activities outside the home. [AR at 173, 176.] In addition, Mr. Crawford described plaintiff's usual mood as anxious, sad, and depressed. [AR at 174.] Mr. Crawford also stated that "[w]hen [plaintiff] drinks, she becomes depressed and suicidal." [AR at 177.] The Court cannot confidently conclude that no reasonable ALJ, if crediting the lay witness statements, would have reached a different disability determination. See Ellison v. Astrue, 2008 WL 4425764, *5 (C.D. Cal. Sept. 29, 2008) ("'[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.") (citing Stout, 454 F.3d at 1056).

While the ALJ does not need to discuss every piece of evidence in the record (see Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991) (the ALJ "does not need to meet the impossible burden of mentioning *every* piece of evidence")), he is required to consider relevant evidence. See Scott v. Shalala, 898 F. Supp. 1238, 1245 (N.D. Ill. 1995) (at a minimum, the ALJ has the duty to consider the "important evidence" and to "articulate . . . his analysis of the evidence . . ." such that the court can "trace the path of [his] reasoning"); see also Dodrill, 12 F.3d at 918-19 ("Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.") (citing Sprague, 812 F.2d at 1232); Dempster v. Astrue, 2008 WL 4381541, at *1 (C.D. Cal. Sept. 23, 2008) ("[T]estimony from someone in a position to observe a claimant's symptoms and daily activities is 'competent evidence.'") (citing Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988)). "When important medical evidence is virtually ignored without

/

/

/

explanation," the ALJ cannot justify his conclusion as based on substantial evidence. Parks, 766 F. Supp. at 635. Accordingly, remand is warranted.[8]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the lay witness statements. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 12, 2009

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] The lay witness statements may also provide support for treating psychiatrist Dr. Lisa Schmid's opinion, on which State Agency psychiatrist Dr. Emanuel H. Rosen relied in the Psychiatric Review Technique form in finding that plaintiff's mental impairments were of listing-level severity [AR at 436, 443, 676-88, 701-02.] This in turn may result in additional limitations being incorporated into the hypothetical question posed to a vocational expert. As such, the ALJ is directed on remand to also consider the impact of the lay witness statements on the other issues raised by plaintiff in the Joint Stipulation.